IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 07-cv-02419-REB-BNB

ERNEST J. MEDINA,

Petitioner,

v.

STEVEN HARTLEY, Warden, Limon Correctional Facility, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

Respondents.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the **Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody** [Doc. #4, filed 12/07/07] (the "Application") filed by Ernest Medina (the "petitioner"). I respectfully RECOMMEND that the Application be DENIED.

## I. THE LAW

The petitioner is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

This Court may review the petitioner's application for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). An application cannot be granted unless it appears that the petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b)(1).

If a petitioner exhausts his available state remedies, his application may be granted only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Factual determinations made by the state court are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Generally, if a petitioner fails to exhaust available state remedies, a federal court should dismiss the application without prejudice so that the state remedies may be pursued. Demarest v. Price, 130 F.3d 922, 939 (10th Cir. 1997). The federal court, however, should first consider whether the petitioner would be able to raise the unexhausted claims in the state court. Id.

If the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the petitioner's claims are procedurally defaulted for purposes of federal habeas corpus relief. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991). The federal court may not consider issues raised in a habeas corpus petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can show cause for the default and actual prejudice as a result of the alleged violation of federal law or can demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. 722, 750 (1991). The determination of cause, prejudice, and fundamental miscarriage of justice are matters of federal law. Demarest, 130 F.3d at 941.

# II.  BACKGROUND

The Colorado Court of Appeals summarized the facts of this case as follows:

> The charges against defendant stem from a shooting between rival gang members that occurred in Colorado Springs.  On the afternoon of May 23, 1997, V.R.G. gang members Juan Candelaria and Vinnicio Martinez (V. Martinez), while traveling in Candelaria's van, were shot at by Pete "Vince" Martinez (P. Martinez), who was a member of a rival gang called the Juaritos.
>
> After the shooting, Candelaria and V. Martinez went to the home of defendant's cousin, Anna Vigil, to see defendant and discuss what had happened.  Several other young men were also present.  While the group was meeting in the kitchen, Vigil overheard Candelaria make comments that he was going to "kill that mother f***** [P. Martinez]."  Other individuals said that they, too, wanted to go after P. Martinez.
>
> Defendant left Vigil's house and, with two others, drove around town.  The group reassembled at the home of defendant's other cousin, Carlos Ahumada.  Ahumada recalled that the group was angry about the shooting and, after about ten to fifteen minutes of discussion, decided to look for P. Martinez.  Ahumada admitted that the group left in two cars.  V. Martinez, Socorro Gutierrez, and Ahumada rode in Candelaria's car.  Defendant rode in the other car.
>
> Defendant was later picked up by his girlfriend.  They gave defendant's mother a ride home from work and went back to defendant's house.
>
> That night, while driving around, Candelaria spotted P. Martinez's car and pulled up behind it.  In the ensuing exchange of gunfire, thirteen-year-old G.R., who was riding in P. Martinez's car, was shot in the head.  Candelaria was subsequently convicted of first degree murder after deliberation, first degree extreme indifference murder, conspiracy to commit first degree extreme indifference murder, conspiracy to commit first degree murder after deliberation, four counts of attempted first degree murder, tampering with physical evidence, and crime of violence.  Another division of this court affirmed in part Candelaria's convictions.

It was undisputed that defendant was not present at the scene of the shooting.

In 2000, based upon information received during the investigation of Candelaria's case, defendant was arrested and charged with first degree murder after deliberation, first degree extreme indifference murder, conspiracy to commit first degree murder after deliberation, conspiracy to commit first degree extreme indifference murder, four counts of attempted first degree murder, and crime of violence.

Defendant's first jury trial was declared a mistrial after the jury was unable to render a unanimous verdict. The jury in a second trial found defendant guilty of conspiracy to commit first degree murder but acquitted him of all other charges. Defendant was sentenced to seventy-two years as a habitual criminal.

*Answer to Application for Writ of Habeas Corpus* [Doc. #13] (the "Answer"), Ex. D, pp. 1-3

(citations omitted).

The petitioner appealed his convictions to the Colorado Court of Appeals. Id. at Ex. A. The appellate court affirmed his judgment of conviction. Id. at Ex. D. The petitioner filed a petition for a writ of certiorari to the Colorado Supreme Court. Id. at Ex. E. The petition was denied on February 20, 2007. Id. at Ex. F. The mandate issued on February 26, 2007. Id. at Ex. G. The petitioner did not file any postconviction motions. *Application*, p. 3, ¶ 10.[1]

The Application asserts one claim. Id. at p. 5. The petitioner alleges that the state trial court violated his Sixth Amendment right to confront and cross-examine witnesses against him when it allowed out-of-court testimonial statements to be repeated through the testimony of Detective Graham. He further alleges that the state appellate court erred because it reviewed the

_____

[1]I cite to the page numbers of the Application as they are assigned by the court's docketing system.

alleged violation under a plain error standard after finding that the petitioner did not object to the testimonial statements.  Id.

The respondents concede, and I agree, that the Application is timely filed within the one year limitation period established by the Antiterrorism and Effective Death Penalty Act. *Answer*, p. 7.  The respondents also concede that the petitioner exhausted his claim in the state courts.  Id. at pp. 7-9.

## III.  ANALYSIS

During the direct examination of Detective Derrick Graham, the following dialogue occurred between the prosecution and Graham:

> Q.    After he was shot at by Pete Vincent Martinez, did [Candelaria] tell you what he did?
>
> A.    Yes.
>
> Q.    Did he tell you who he got together with?
>
> A.    Yes.
>
> Q.    Can you tell you [sic] who it is that he said he got together with?
>
> A.    He said he got together with Vinnicio Martinez, Ernie Medina, Eddie Gonzales, Gilbert Beltran, Richard Martinez, and there was one other  . . . .
>
>                     * * *
>
> He said it was Vinnicio, Gilbert Beltran, Ernie Medina, Eddie Medina and himself.
>
> Q,    Did he say what the purpose of them getting together was?
>
> A.    They were all going to go out and look for Vince Martinez.
>
> Q.    And why are they going to go out and look for Vincent Martinez?

A.   To take care of him.

Q.   And why were they going to take dare of him?

A.   Because of what happened earlier, where Vince had shot at Juan and Vinnicio.

* * *

Q.   Did they indicate to you what they intended to do to him?

A.   They intended on taking care of Vince, to kill Vince.

Q.   Did he indicate who the intended victim was?

A.   Vince Martinez.

Q.   Did he indicate again why it was that he intended to do that?

A.   Because of what had occurred earlier, the reference of being shot at by Vince Martinez.

* * *

Q.   What did he tell you about that?

A.   That they had made a mistake.  That they did not mean to shoot Gino.  That their intent was to find and kill Vince Martinez.

* * *

Q.   But in indicating that he was not the intended victim did he indicate what turned out was not their intended plan?

A.   No.  That was their intended plan, was to find Vince and shoot Vince.  So their plan proceeded accordingly but the outcome was something that they didn't anticipate.

Q.   Again, is there any question in your mind that he indicated Ernie Medina was one of the people who was looking to get Vince that night?

A.   No question at all.  He said Ernie was one of them that had gone out and was actively looking.

*Trial Transcripts*, February 10, 2003, 94:23-96:1; 98:5-99:18.

The state appellate court determined that the out-of-court testimonial statements were admitted in violation of the petitioner's Sixth Amendment rights:

> Defendant next contends that the trial court violated his constitutional right to cross-examination by allowing out-of-court statements made by Candelaria into evidence in violation of <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). . . .

> Both in the first trial and in the second trial, Candelaria refused to testify, although he had already been convicted, and as such was an unavailable witness.

> In <u>Crawford</u>, the United States Supreme Court held that the testimonial hearsay of an unavailable declarant is admissible, consistent with federal Confrontation Clause guarantees, if the defendant has been given a prior opportunity to cross-examine the declarant.  In <u>Compan v. People</u>, 121 P.3d 876, 882 (Colo. 2005), our supreme court held that the nontestimonial hearsay of an unavailable declarant is admissible, consistent with federal and state Confrontation Clause guarantees, if the hearsay bears sufficient indicia of reliability by either falling within a "firmly rooted hearsay exception" or having "particularized guarantees of trustworthiness."

> Because defendant had not been given an opportunity to cross-examine Candelaria, the admission of his statements would run afoul of <u>Crawford</u> if his statements were testimonial in nature.  We conclude the statements were testimonial.

> In <u>People v. Vigil</u>, 127 P.3d 916, 927-28 (Colo. 2006), our supreme court distilled the testimonial inquiry under <u>Crawford</u> into two considerations: (1) whether, to what extent, and for what purpose government officials were involved in producing the statements; and (2) whether an objective person in the declarant's position would believe that the statements would be available for use at a later trial.

> Here, the sequence of events surrounding Candelaria's statements to Detective Graham strongly suggests that Candelaria's statements were testimonial in nature.  Detective Graham, the lead detective in the case, contacted Candelaria after he had been taken into custody.  At that time, plea negotiations were ongoing

involving what Candelaria could do "as far as getting other people involved in the shooting to discuss and talk with him about what had happened." Detective Graham indicated that he had reached an agreement with Candelaria whereby Candelaria would conduct a pretext phone call to Gutierrez and the police would listen in as he tried to get Gutierrez to talk about the shooting. Because the government was substantially involved in producing the statements, and was involved for the purpose of a later trial, we conclude that, under the tests set forth in People v. Vigil, supra, Candelaria's statements to Detective Graham were testimonial in nature and, thus, admitted in violation of defendant's confrontation rights.

*Answer*, Ex. D, pp. 7-10 (citations omitted except where provided).  .

The appellate court then determined that because the petitioner did not specifically object to the testimony at trial, the error would be reviewed for plain error:

Having found error, we next assess the consequences of that error.

Citing to specific portions of the record, defendant contends that defense counsel timely objected to the introduction of Candelaria's statements. The People, in contrast, contend that defendant did not object to these statements and thus the standard of review is plain error. Upon review of the record, we agree that defendant did not specifically object to this testimony. See Raygor v. Bd. of County Comm'rs, 21 P.3d 432, 439 (Colo. App. 2000) (the appellate court is not required to search for evidence to support a party's assertion on appeal).

Because defendant did not object in the trial court to the admissibility of Candelaria's statements on confrontation grounds, reversal is not warranted in the absence of a showing of plain error.

Plain error occurs when, after review of the entire record, the appellate court concludes that the error undermined the fundamental fairness of the trial. Plain error requires reversal only when the error so undermined the trial's fundamental fairness as to cast serious doubt on the reliability of the conviction.

Here, when the record is considered as a whole, the admission of Candelaria's statements to Detective Graham did not rise to the

level of plain error. We recognize that Candelaria's statements to Detective Graham showed that defendant was with the group while it was looking for P. Martinez. However, this testimony was cumulative to the testimony of Vigil that defendant met with the group at her house to discuss the shooting. Likewise, Ahumada testified that defendant reassembled with the same group to further discuss the shooting and that defendant subsequently left with the group to look for P. Martinez. Accordingly, Candelaria's statements to Detective Graham were brief and served only to confirm the testimony of other witnesses. We also note that during closing remarks, the prosecutor made only a passing reference to Candelaria's statements to Detective Graham.

In light of the limited nature of Candelaria's statements to Detective Graham, and the cumulative nature of this evidence to that provided through the testimony of others, we cannot say that the error in admitting Candelaria's statements was such that it cast serious doubt on the reliability of defendant's conviction. Consequently, the error does not qualify as plain error, and reversal is not warranted on this ground.

Id. at pp. 10-12 (citations omitted except where provided).

Where a state court reviews for plain error an issue otherwise waived for lack of a trial objection, federal habeas review may be barred:[2]

A state court may deny relief for a federal claim on plain-error review because it finds the claim lacks merit under federal law. In such a case, there is no independent state ground of decision and, thus, no basis for procedural bar. Consistent with that conclusion, the state court's disposition would be entitled to § 2254(d) deference because it was a form of merits review. On the other hand, a state court could deny relief for what it recognizes or assumes to be federal error, because of the petitioner's failure to satisfy some independent state law predicate. In such a case, that non-merits predicate would constitute an independent state ground for decision which would warrant application of procedural-bar principles on federal habeas. If the state procedural bar were then

_____

[2]Although the state did not raise the issue of procedural bar, I have discretion to consider it *sua sponte*. Glover v. Newton-Embry, No. 09-6165, 2010 WL 675704 at *3 (10th Cir. Feb. 26, 2010).

9

> excused for some reason, the federal court would be left to resolve the substantive claim de novo, unconstrained by § 2254(d).

Cargle v. Mullin, 317 F.3d 1196, 1205-06 (10th Cir. 2003) (citations omitted); Glover v. Newton-Embry, No. 09-6165, 2010 WL 675704 at *3 (10th Cir. Feb. 26, 2010).

Here, the state appellate court recognized the federal error, but denied relief on plain error review after finding that the plaintiff had failed to specifically object to the testimony. The federal habeas court cannot review a claim that has been defaulted in state court on an independent and adequate state procedural ground unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice. Coleman, 501 U.S. 722, 750 (1991). "A state court finding of procedural default is independent if it is separate and distinct from federal law." Maes v. Thomas, 46 F.3d 979, 985 (10th Cir.1995). A finding of procedural default is an adequate state ground if it has been applied evenhandedly "in the vast majority of cases." Id.

The state appellate court resolved the Confrontation Clause claim under a plain error review unrelated to the federal constitutional issue. Therefore, the appellate court's review constitutes an "independent" ground. Glover v. Newton-Embry, 2010 WL 675704 (10th Cir. Feb. 26, 2010). The procedural bar, as applied to the petitioner's claim, was an "adequate" state ground because the Colorado appellate court consistently applies a plain error review when a defendant does not object to the admission of evidence at trial. Colo. R. Crim. P. 52(b); People v. Miller, 113 P.3d 743, 745 (Colo.2005) (stating that plain error standard of review is applied when a defendant who failed to raise a contemporaneous objection alleges a trial error and applying plain error standard of review because defendant did not argue at trial that the alleged hearsay evidence violated his confrontation rights); see, e.g., People v. Gash, 165 P.3d 779, 781 (Colo.

App. 2006) (reviewing for plain error because defendant objected to the testimony based on hearsay, not on confrontation grounds and therefore the alleged confrontation error was not preserved); People v. Sharp, 155 P.3d 577, 579 (Colo. App., 2006) (same).

Because this claim is procedurally barred, I may not consider it unless the petitioner can either (1) show cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) demonstrate that a failure of this court to consider the claims will result in a fundamental miscarriage of justice. English v. Cody, 146 F.3d 1257, 1259 (10th Cir.1998) (citing Coleman, 501 U.S. at 749-50); Steele v. Young, 11 F.3d 1518, 1521 (10th Cir.1993). The petitioner's *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice. Lepiscopo v. Tansy, 38 F.3d 1128, 1130 (10th Cir.1994).

The petitioner argues that "[t]he Court of Appeals failed to realize that counsel for the defense had timely objected to the introduction of Candelaria's statements that were made to Det. Graham in the first trail that resulted in a mistrial and all those objections were to have carried over to the second trial per the sua sponte of the trial court. Therefore, the cursory objection in the second trial should have been sufficient to warrant stricter review by the high court."[3] *Application*, p. 5.

---

[3]The petitioner also argues the merits of his Confrontation Clause claim, *Application*, p. 5, and that admission of the testimony was plain error. *Supplement to Writ of Habeas Corpus Pursuant to 28 U.S.C. Fed.R.Civ.P. 15(d)* [Doc. #27]. Because I find that the claim is procedurally barred and that the bar cannot be excused, I do not reach these arguments.

The petitioner does not provide any citation to the record which supports this argument.[4] After a thorough and careful review of the state court record, I find that defense counsel did not object to the admission of Detective Graham's testimony regarding Mr. Candelaria's statements.[5] *Trial Transcripts*, February 10, 2003, pp. 4-105.

Because the claim is procedurally defaulted, and because the petitioner did not demonstrate cause and prejudice or a fundamental miscarriage of justice, this claim is not proper for consideration on an application for writ of habeas corpus.

## IV. CONCLUSION

I respectfully RECOMMEND that the Application be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review

---

[4]I note that the petitioner stated in his brief to the state appellate court that defense counsel objected to the statements, but similarly failed to provide any citation to the record to support the assertion. *Answer*, Ex. A, p. 14.

[5]Defense counsel renewed objections made to certain exhibits at the first trial, but did not at that time renew any objections to Detective Graham's testimony regarding Juan Candelaria's statements. *Trial Transcripts*, February 10, 2003, p. 4. In addition, prior to calling Detective Graham as a witness, the prosecution brought up the issue of Juan Candelaria's statements, but the defense did not make an objection to the introduction of the statements. Id. at pp. 15-16. Finally, the defense did not object at any time during Detective Graham's testimony regarding Mr. Candelaria's statements. Id. at pp. 90-102.

by the district court or for appellate review.  <u>United States v. One Parcel of Real Property</u>, 73

F.3d 1057, 1060 (10th Cir. 1996).

Dated March 26, 2010.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge